IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 14-cv-01807-RPM

HUNTER DOUGLAS INC., a Delaware corporation

Plaintiff,

v.

JASON T. THRONE, an individual,
MARY C. THRONE, an individual, and
PATENT SERVICES GROUP, INC., a Maine corporation,

Defendants.

## STIPULATED DISMISSAL OF DEFENDANT MARY C. THRONE

Subject to the terms of the Stipulation and Settlement Agreement (the "Agreement") (attached hereto as Exhibit A) entered into by Plaintiff Hunter Douglas, Inc. ("HDI"), and Defendant Jason T. Throne, Defendant Mary C. Throne and Defendant Patent Services Group, Inc. (collectively the "Defendants"), the Parties hereby stipulate that:

1.      Condition upon, and concurrent with, the entry of Stipulated Judgment, the Parties have agreed to dismiss all claims against Defendant Mary C. Throne with prejudice.

Therefore, the Court DISMISSES WITH PREJUDICE all claims against Defendant Mary C. Throne, as stipulated herein.

Dated November **21st**, 2014.

BY THE COURT:

_____

Richard P. Matsch
Senior Judge

Approved by Counsel for Plaintiffs:

/s/ Randall H. Miller
_____
Randall H. Miller
Kathryn R. DeBord
BRYAN CAVE LLP
1700 Lincoln Street, Suite 4100
Denver, CO  80203-4541
        Tel: 303-861-7000 - Fax: 303-866-0200
        Email: randy.miller@bryancave.com
               katie.debord@bryancave.com

Approved by Counsel for Defendants:

/s/ Colin Walker
_____
Colin Walker
FAIRFIELD AND WOODS, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
        Tel: 303-830-2400
        Email: cwalker@fwlaw.com

George T. Dillworth
George T. Dilworth
DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
        *Tel:* 207-772-1951
        *Email:* tdilworth@dwmlaw.com
                sbagley@dwmlaw.com

Peter J. DeTroy III.
NORMAN, HANSON & DETROY, LLC
Two Canal Plaxa
P.O. Box 4600
Portland, Maine 04112-4600
        *Tel:* 207-775-0806
*Email:* pdetroy@nhdlaw.com

## STIPULATION AND SETTLEMENT AGREEMENT

This Stipulation and Settlement Agreement ("Agreement") is made and entered into by Plaintiff, Hunter Douglas, Inc., a Delaware corporation ("Plaintiff" or "HDI"), and Defendants, Jason T. Throne ("Mr. Throne"), Patent Services Group, LLC ("PSG") (together, the "Defendants"), and Mary C. Throne ("Mrs. Throne"). This Agreement shall be effective as of the ⌐13 day of November, 2014 (the "Effective Date").

### Recitals

Whereas, the Plaintiff filed a lawsuit by filing a complaint (the "Complaint") against the Defendants in the United States District Court for the District of Colorado, styled Hunter Douglas, Inc. v. Jason T. Throne, Mary C. Throne and Patent Services Group, Inc., Civil Action No. 14-cv-1807 (the "Action");

Whereas, the Parties desire to enter into this Agreement to provide for a final settlement of all claims set forth in the Action;

Whereas, Mr. Throne admits the following factual allegations contained in the Complaint:

- Mr. Throne was an employee of Plaintiff from August 16, 1993 to June 12, 2014.
- On about December 29, 1999, Mr. Throne incorporated PSG under the laws of the State of Colorado.
- In January 2000, Mr. Throne rented a Post Office Box in Boulder, Colorado, for the receipt of payments and other mail to PSG.
- Beginning in 2001, Mr. Throne was given the title of Intellectual Property General Counsel and was given supervisory authority over Plaintiff's intellectual property portfolio, including the Plaintiff's patent-related matters.
- Mr. Throne was the Plaintiff's only in-house counsel dedicated to Intellectual Property matters.
- Through his position with Plaintiff, Mr. Throne was entrusted to approve patent related expenditures, including retaining outside professional assistance on behalf of Plaintiff.
- On approximately a monthly basis from 2000 through April 2014, Mr. Throne prepared invoices from PSG to Plaintiff requesting payment for patent searches allegedly performed by PSG in the previous month.
- Mr. Throne prepared the invoices on his Hunter Douglas computer. He then printed the invoices and marked them for approval. From his home office in Colorado and then later from his home office in Maine, he faxed the approved invoices directly to Hunter Douglas' Window Fashions Division's accounts payable department in Colorado.
- The return address on the invoices that Mr. Throne prepared was the Post Office Box in Boulder, Colorado in PSG's name, and Plaintiff remitted payments to PSG via the United States mail to that Post Office Box.

Exhibit A

- Between 2000 and 2014, Plaintiff paid PSG and/or Mr. Throne $4,841,146.09 based on the fraudulent invoices submitted by Mr. Throne on behalf of PSG.
- Plaintiff reasonably relied on Mr. Throne's approval of the PSG invoices in processing and paying the invoices.
- Mr. Throne deposited all payments from Plaintiff to PSG in a checking account maintained in the name of PSG at a bank in Boulder, Colorado.   The account was established and controlled by the Defendants.
- Mr. Throne hid the relationship between PSG and Mr. Throne from Plaintiff.
- On or about September 17, 2007, Mr. Throne signed a conflict of interest policy with Plaintiff in which he represented that he was not involved in any activities that were in conflict with Plaintiff, and that he did not have any secondary source of income or employment.
- Mr. Throne used the money obtained through the fraudulent PSG bills in such a manner as to permanently deprive Plaintiff of the use or benefit of that money.
- Mr. Throne knowingly obtained and exercised control over Plaintiff's property by deception.
- Mr. Throne intended to permanently deprive Plaintiff of the use or benefit of the money paid to PSG.
- Mr. Throne's actions constitute theft under the provisions of Colo. Rev. Stat. § 18-4-401 *et seq.*
- Mr. Throne knowingly obtained and exercised control over Plaintiff's money by fraud and deception by failing to disclose that he was using his position with Plaintiff to approve PSG's invoices even though he prepared and approved PSG's invoices.
- Mr. Throne wrongfully appropriated and exercised permanent dominion and control over Plaintiff's property to the exclusion of Plaintiff.
- Mr. Throne's exercise of dominion and control over the monies paid to PSG unjustifiably denied Plaintiff the right to use, consume, exploit and profit from such monies.
- Mr. Throne's exercise of dominion and control over Plaintiff's property was without legal justification and constituted conversion of Plaintiff's property.
- In his role as in-house counsel for Plaintiff, Mr. Throne was charged to perform his duties in good faith and in the best interest of Plaintiff.
- Mr. Throne owed Plaintiff fiduciary duties of loyalty, honesty, good faith, full, open and honest disclosure, and the exercise of due care and diligence in the management and administration of Plaintiff's affairs.
- Mr. Throne breached his duties to Plaintiff by deceiving and misleading Plaintiff by among other things:  failing to inform Plaintiff of his activities, concealing his personal interest in PSG, exceeding the scope of his authority by approving PSG's rate increases on Plaintiff's behalf, and exceeding the scope of his authority by approving the payments from Plaintiff to PSG.

## Agreement

Now, therefore, for and in consideration of the covenants, recitals, and conditions contained herein, Plaintiff and Defendants agree as follows:

1.   **Recitals**. The Recitals set forth above are incorporated herein.

2.   **Agreed Judgment**. Contemporaneous with the execution of this Agreement, the Defendants shall execute the confession of judgment in the amount of $5,068,589.70, and in the form attached as Exhibit 1 (the "Judgment"). Plaintiff and Defendants shall jointly file the Agreement and the Judgment and request the Judgment be entered according to the Agreement.

3.   **Financial Statements and Tax Returns**. Prior to entry of the Judgment, Mr. Throne shall provide Plaintiff with verified financial statements including but not limited to a balance sheet for the period ended September 30, 2014, and income statements for the year ended December 31, 2013 and the nine-months ended September 30, 2014, as well as a verified comprehensive disclosure of all assets he holds or controls. Thereafter, Mr. Throne shall provide the Plaintiff with a copy of their federal and state tax returns annually for a period of ten (10) years. Prior to entry of the Judgment, Mrs. Throne shall provide Plaintiff with a sworn statement containing the following information: (i) a complete listing of her assets, (ii) that she does not have any expectation of any inheritance, windfall, income, or any other influx of assets, and/ or to be named as the beneficiary of a trust, (iii) that she is waiving any interest in property owned with Mr. Throne, and (iv) a list of the property that has been conveyed to her by Mr. Throne in the last ten (10) years.

4.   **Satisfaction of Judgment – Excess Proceeds In Real Properties**. In connection with the Lawsuit, HDI issued and recorded Notices of Lis Pendens indicating that the Lawsuit seeks relief which may affect title, possession, use or enjoyment of certain real property rights in the properties (collectively referred to as the "Properties") located at:

1)   APN 931253004 in the County of Routt, State of Colorado, more particularly described in the Notice of Lis Pendens, recorded in the real property records of the County of Routt, State of Colorado at Reception No. 750007 on July 16, 2014, and attached hereto as Exhibit 2 to this Agreement;

2)   41 Pandion Lane, in the Town of Rockport, County of Knox, State of Maine, more particularly described in the Notice of Lis Pendens, recorded in the real property records of the County of Knox, State of Maine Receipt No. 75215, Vol. 4819, Pg. 238 on July 22, 2014 and attached hereto as Exhibit 3 to this Agreement; and

3)   Vacant land located on Barnestown Road in the Town of Camden, County of Knox, State of Maine, more particularly described in the Notice of Lis Pendens, recorded in the real property records of the County of Knox, State of Maine at Receipt No. 75215, Vol. 4819, Pg. 238 on July 22, 2014, and attached hereto as Exhibit 3 to this Agreement;

By virtue of this Agreement, HDI agrees to the release of the aforementioned Notices of Lis Pendens to allow the sale of the Properties. Defendants agree that all proceeds resulting from the sale of any or all of the Properties after payment of all prior liens on the Properties and usual,

customary and appropriate closing costs (the "Net Proceeds") will be distributed within five (5) days of the sale to HDI in a manner to be specified by HDI. Defendants agree that they shall not use any of the Net Proceeds for their personal benefit, including without limitation to pay any of their expenses resulting from the sale of the Properties.

5. **Non-Disclosure of Trade Secrets.** Defendants acknowledge that, by virtue of Mr. Throne's employment and position within HDI, Mr. Throne had access to know-how, trade secrets, inventions, patents, trademarks, and copyrights of HDI and its corporate affiliates and subsidiaries. These trade secrets and know-how include designs, products, processes, services, research, development, inventions, systems, engineering, manufacturing, purchasing, financing, pricing, accounting, marketing, sales, merchandise, customers, and customer lists, as well as formulas, drawings, plans, models or records involving or in any way relating to operations, products, customers potential customers, or experimental investigations of HDI and its corporate affiliates and subsidiaries. ("HDI Trade Secrets").

Defendants agree not to use or disclose any HDI Trade Secrets to anyone outside the employ of HDI, except as necessary to answer questions from and cooperate with law enforcement authorities or to respond to court process and only after obtaining an appropriate confidentiality order from the court. Additionally, within five (5) days of the execution of this Agreement, Defendants agree to return any products, files, documents, photographs, videos, recordings, computer files, or things embodying or relating to any Confidential HDI Information that has not yet been returned or provided to law enforcement authorities.

6. **Covenant Not To Compete.** Mr. Throne agrees that for a term of three years following the execution of this Agreement, he will not directly or indirectly in any capacity or to any extent participate or have any interest in, perform services for, be employed by, or be connected with any business engaged in the development, manufacture, sale or distribution of any products (or their associated components, fabrics, equipment, or manufacturing processes) similar to or competitive with those developed (or under development at the time Mr. Throne was employed by HDI), manufactured, sold or distributed by HDI and its corporate affiliates and subsidiaries. The geographic area in which this restriction applies is North America. For the term of this agreement, Mr. Throne acknowledges and agrees that he is prohibited, for example and without limitation, from owning, managing, operating, controlling, financing, holding office in, being employed by, consulting for, acting as an independent contractor for, or holding shares sufficient to control a seat on the board of directors in any business engaged in the development, manufacture,  or distribution of products similar to or competitive with those developed (or under development at the time Mr. Throne was employed by HDI), manufactured, sold, or distributed by HDI and its corporate affiliates and subsidiaries. ("The Covenant")

The Parties understand and agree that Mr. Throne's Covenant is made in connection with his agreement to protect HDI Trade Secrets obtained by Mr. Throne in his executive and managerial capacity as the General Counsel of Intellectual Property for HDI as specified in Paragraph 5. The Parties agree that Mr. Throne's covenant not to compete is reasonably limited in scope to protect HDI Trade Secrets. The Parties further agree that, should any part of this Covenant be deemed unreasonable or unenforceable, a Court of competent jurisdiction may sever or reform this Covenant to the extent necessary to render it reasonable and enforceable.

7. **Continuing Enforcement/No Transfer of Assets**. Within ten (10) days of the execution of this Agreement, Defendants agree to provide HDI with a complete list of their assets and the Defendants' belief as to the fair market value of such assets. Within thirty (30) days of receiving the asset list from the Defendants, HDI will identify the assets which it wants to partially satisfy the Judgment. The Defendants agree to transfer to HDI any of the assets designated by HDI for transfer. To the extent HDI does not designate an asset for Transfer, the Defendants can sell the asset. By executing below, Defendants also acknowledge that they have not transferred or gifted any assets worth over $2,000 in value to either of their two children within the past 90 days.

8. **Reliance on Material Representations**. The Parties understand and agree that HDI has entered into this agreement, including the Dismissal of Mrs. Throne, based on (a) the representations contained in Paragraphs 3 and 7; and (b) Mary Throne's representations that she is an "innocent spouse" and was not aware of and did not knowingly participate in the matters as alleged in the complaint.

9. **Dismissal of Mrs. Throne**. Upon execution of this Agreement, Plaintiff shall dismiss the Complaint against Mrs. Throne with prejudice. However, to the extent Mrs. Throne has made material misrepresentations to HDI as set forth in Paragraph 8, or otherwise fails to fully comply with the terms of this Agreement, including but not limited to her obligations under Paragraph 3, HDI can pursue Mrs. Throne on all claims set out in the Complaint.

10. **Voluntarily Entered**. The Parties represent and warrant that this Agreement is executed voluntarily and by the parties with the full knowledge of the consequences and implications of the obligations contained herein. The Parties also represent and warrant that they have had the opportunity to be represented by counsel of their choice throughout the negotiations which preceded the execution of this Agreement, and in connection with the preparation and execution of this Agreement, and that they have carefully and thoroughly reviewed this Agreement in its entirety with their attorneys, have fully understood and agreed with each and every term included herein, have executed this Agreement with the advice and consent of their attorneys.

11. **Successors and Assigns**. All rights and obligations under this Settlement Agreement shall be binding upon and inure to the benefit of each Parties' successors and assigns.

12. **Execution of Additional Documents and Further Assurances**. The Parties agree to take any further actions and to execute any further documents, stipulations, motions, releases, or other documents necessary to effectuate this Agreement, including but not limited to deeds related to real property.

13. **Complete Integration/Modification**. This Agreement constitutes the full and complete integration of the parties' Agreement with respect to the matters described herein, and all statements, negotiations and prior agreements or understandings with respect to these matters are merged herein. This Agreement may be modified only by a written instrument signed by all parties hereto.

14. **Execution in Multiple Counterparts.** This Settlement Agreement and all documents to be executed hereunder may be executed in multiple counterparts, each of which may be treated as an original document.

15. **Copies.** Both facsimile and photocopies of the executed Settlement Agreement may be treated as original documents.

16. **Breach.** A failure to perform any of the obligations under this or any breaches of the terms of this Agreement shall be considered a material breach of this Agreement. The Parties agree that in any action to enforce the terms of this Agreement, the Court shall award attorneys' fees and costs to the prevailing party and may further award attorneys' fees and costs as an element of damages. Additionally, in the event of a breach of Paragraphs 5, 6, or 7, Defendants agree that Plaintiff shall be entitled to, in addition to any other remedies and relief available, an ex parte injunction (without the necessity of posting a bond) to restrain violation of that Paragraph by Defendants or any of Defendants' partners, agents, servants, employers, employees, controlled entities and all persons acting for or with Defendants. Defendants also acknowledge that, in the event of a breach of Paragraphs 5, 6, or 7, Plaintiff shall be entitled to any additional equitable relief, if applicable, including without limitation all profits and/or benefits arising from such breach. To the extent Mrs. Throne fails to fully comply with her obligations under Paragraph 3 of this Agreement, or has made material misrepresentations to HDI, the dismissal of Mrs. Throne as set forth in Paragraph 9 of this Agreement will be deemed to have been made by a mistake on the part of Plaintiff and/or fraud on the part of Mrs. Throne and will allow Plaintiff to pursue all causes of action set forth in the Complaint against Mrs. Throne.

17. **Applicable Law, Venue.** This Agreement shall be construed, interpreted, and applied in accordance with the laws of Colorado. The courts and authorities of the state of Colorado and the Federal District Court for the District of Colorado shall have exclusive jurisdiction over all disputes arising out of this Agreement, and the exclusive venue for any action brought by either party shall be proper in United States District Court for the District of Colorado or in the state judicial district encompassing Broomfield, Colorado or Denver, Colorado. Defendants agree that, should they initiate an action or suit in any state other than Colorado, upon application by HDI, the suit shall be dismissed without prejudice and filed in a court in the state of Colorado in accordance with this Agreement.

18. **Waiver of Statute of Limitations Defense.** Mr. Throne understands that he may have defenses based on the applicable statutes of limitations but hereby waives them.

19. **Parties Intent In the Event Mr. Throne Files Bankruptcy.** It is the intent of the parties that the Judgment be non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (4) and/or (6).

20. **Continuing Cooperation.** The Defendants agree to cooperate with HDI in HDI's attempts to obtain financial statements, including but not limited to bank statements, related to any and all of the Defendants. HDI will pay the costs associated with obtaining the statements from third parties; however, the Defendants will execute any documents or take any other actions necessary to obtain the financial statements.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in their respective names on the date of this Agreement.

JASON THRONE

_____

MARY THRONE

_____

PATENT SERVICES GROUP, LLC

By: _____
       Jason T. Throne

HUNTER DOUGLAS INC.

By: _____

1700233.6
HRODEN\1703506.3

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in their respective names on the date of this Agreement.

JASON THRONE

_____

MARY THRONE

*Mary Throne*

PATENT SERVICES GROUP, LLC

By: _____

HUNTER DOUGLAS INC.

By: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 14-cv-01807-RPM

HUNTER DOUGLAS INC., a Delaware corporation

Plaintiff,

v.

JASON T. THRONE, an individual,
MARY C. THRONE, an individual, and
PATENT SERVICES GROUP, INC., a Maine corporation,

Defendants.

## STIPULATED JUDGMENT

Subject to the terms of the Stipulation and Settlement Agreement (the "Agreement") (attached hereto as Exhibit A) entered into by Plaintiff Hunter Douglas, Inc. ("HDI"), and Defendant Jason T. Throne, Defendant Mary C. Throne and Defendant Patent Services Group, Inc. (collectively the "Defendants"), the Parties hereby stipulate that:

1.      HDI is awarded a judgment against Defendant Jason T. Throne and Patent Services Group, Inc., jointly and severally, in the amount of $ 5,068,589.70.

2.      Each Party agrees that this Stipulation is entered into voluntarily and in good faith for the purpose of resolving their disputes and without any intent to hinder or delay the lawful exercise of each Party's rights.

Exhibit 1

3.     The Parties stipulate and agree that entry of this Stipulated Judgment will resolve the instant action and that, pursuant to Fed. R. Civ. P. 54 and 58, each side shall bear its own costs and fees.

Therefore, the Court ORDERS ENTRY OF JUDGMENT, pursuant to Fed. R. Civ. P. 54 and 58, as stipulated herein.

Dated November _____, 2014.

BY THE COURT:

_____
Richard P. Matsch
Senior Judge

Approved by Counsel for Plaintiff:

/s/ Randall H. Miller
Randall H. Miller
Kathryn R. DeBord
BRYAN CAVE LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
        Tel: 303-861-7000 - Fax: 303-866-0200
        Email: randy.miller@bryancave.com
              katie.debord@bryancave.com

Approved by Counsel for Defendants:

/s/ Colin Walker
Colin Walker
FAIRFIELD AND WOODS, P.C.
1801 California Street, Suite 2600
Denver, CO 80202
        Tel: 303-830-2400
        Email: cwalker@fwlaw.com

HRODEN\1703821 1

George T. Dillworth
George T. Dilworth
DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
    *Tel:* 207-772-1951
        *Email:* tdilworth@dwmlaw.com
            sbagley@dwmlaw.com

Peter J. DeTroy III.
NORMAN, HANSON & DETROY, LLC
Two Canal Plaxa
P.O. Box 4600
Portland, Maine 04112-4600
    *Tel:* 207-775-0806
*Email:* pdetroy@nhdlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:14-cv-01807-RPM

HUNTER DOUGLAS INC.,
a Delaware corporation,

Plaintiff,

v.

JASON T. THRONE, an individual,
MARY C. THRONE, an individual, and
PATENT SERVICES GROUP, INC.,
a Maine corporation,

Defendants.

## NOTICE OF LIS PENDENS FOR JASON T. THRONE AND MARY C. THRONE

NOTICE IS HEREBY GIVEN that the above-mentioned Plaintiff has filed a Complaint

and Jury Demand in the above-captioned civil action seeking relief which may affect title,

possession, use or enjoyment of certain real property rights thereon described as follows:

See Exhibit A attached hereto and incorporated herein by this reference.

The property is also known as APN 931253004 in the County of Routt, State of
Colorado.

Dated this 15th day of July, 2014.

Return to:
Nora Ablutz, Paralegal
Bryan Cave ▮▮▮
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203-4541

1684405.1

**Exhibit 2**

RECEPTION#: 750007, 07/16/2014 at
10:40:01 AM,
1 OF 3,  R  $21.00 Doc Code:LP
Kay Weinland, Routt County, CO

*s/Kathryn R. Debord*
Randall H. Miller
Kathryn R. DeBord
BRYAN CAVE LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado  80203-4541
Telephone:      (303) 861-7000
Facsimile:      (303) 866-0200
Email:           randy.miller@bryancave.com
                   katie.debord@bryancave.com

ATTORNEYS FOR PLAINTIFF HUNTER DOUGLAS,
INC.

1684405.1

# EXHIBIT A
## LEGAL DESCRIPTION
### OF
### PROPERTY SUBJECT TO NOTICE OF LIS PENDENS

A tract of hind located in a portion of Tract 112, Section 25, Township 7 North, Range 86 West of the 6th P.M., Routt County, Colorado, more particularly described as follows:

BEGINNING at AP Corner No. 6, Tract 112, a found Standard GLO Brass Cup properly stamped; thence N 89deg 46'00" W 1323.67 feet along the north line of the SE1/4SW1/4 of the Resurvey describing Tract 132, Section 25 to the NW corner SE$^1$/$_4$SW$^1$/$_4$, Tract 112 to a found No. 5 rebar with Plastic cap stamped 1.87736 being on the west line of Tract 112;

thence S 00deg 35'45" E 1317.10 feet along the west line of Tract 112 to AP Corner No. 3, Tract 112, a found GLO Brass Cap properly marked;

thence N 89deg 52'59" E 1679.67 feet along the south line of Tract 112 between AP Corner No. 3 and AP Corner No. 4 to the existing centerline of Route County Road No. 46;

thence along the existing centerline of Routt County Road No. 46 the following 10 (ten) courses;

1. N 17deg 03'11" W 635 feet to a point of curvature:

2. along a curve to the left a distance; of 156.92 feet, with a radius of 327.29 feet and the chord of said curve bears N 30deg 47'19" W 155.42 feet;

3. N 44deg 31'27" W 149.61 feet;

4. N 37deg 51'15" W 153.57 feet to a point of curvature;

5. along a curve. to the left a distance of 105.52 feet, with a radius of 227.26 feet and the chord of said curve bears N 52deg 19'25" W 104.57 feet;

6. N 66deg 47'35" W 82.28 feet to a point of curvature;

7. along a curve to the right a distance of 147.34 feet, with a radius of 318.89 feet and the chord of said curve bears N 53deg 33'24" W 146.03 feet;

8. N 40deg 19'12" W 177.22 feet to a point of curvature;

9. along a curve to the left a distance of 264.25, with a radius of 494.65 feet and the chord of said curve bears N 55deg 37'28" W 261.12 feet;

10. N 70deg 55'44" W 199.80 feet;

thence N 59deg 51'36" E 816.10 feet to the POINT OF BEGINNING.

Bearings arc based upon the monumented line between the found standard GLO Brass Cap for AP Corner No. 6, Tract 112, and the found GLO Brass Cap for AP Corner No. 5, Tract 112. Bearing being S 89deg 42'44" E 2642.80 feet.

1684405.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:14-cv-01807-RPM

HUNTER DOUGLAS INC.,
a Delaware corporation,

Plaintiff,

v.

JASON T. THRONE, an individual,
MARY C. THRONE, an individual, and
PATENT SERVICES GROUP, INC.,
a Maine corporation,

Defendants.

**VOL 4819 PG 238**
07/22/2014 02:52:42 PM
8 Pages

Receipt # 75215   KNOX SS:   RECEIVED
Instr # 2014-6549
ATTEST: Lisa J.Simmons, Knox County Registry of Deeds

---

### NOTICE OF LIS PENDENS FOR JASON T. THRONE AND MARY C. THRONE

---

NOTICE IS HEREBY GIVEN that the above-mentioned Plaintiff has filed a Complaint and Jury Demand in the above-captioned civil action seeking relief which may affect title, possession, use or enjoyment of certain real property rights thereon described as follows:

1.  The property described in Exhibit A, attached hereto and incorporated herein by reference, and meaning and intending to describe real property conveyed by Warranty Deed from J. Mark Lane to Jason T. Throne and Mary C. Throne dated November 14, 2006 and recorded in the Knox County Registry of Deeds at Book 3715, Page 219. Said property is commonly known as 41 Pandion Lane, in the Town of Rockport, County of Knox, State of Maine.

2.  The property described in Exhibit B, attached hereto and incorporated herein by reference, and meaning and intending to describe real property conveyed by Warranty Deed from Jean Doty to Jason T. Throne and Mary C. Throne dated April 7, 2003 and recorded in the Knox County Registry of Deeds at Book 2957,

1684297.3

**Exhibit 3**

Page 304.  Said property is vacant land located on Barnestown Road in the Town of Camden, County of Knox, State of Maine.

Dated this 17th day of July, 2014.

Randall E. Miller
Kathryn R. DeBord
BRYAN CAVE LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado  80203-4541
Telephone:    (303) 861-7000
Facsimile:     (303) 866-0200
Email:          randy.miller@bryancave.com
                    katie.debord@bryancave.com

ATTORNEYS FOR PLAINTIFF HUNTER DOUGLAS, INC.

STATE OF COLORADO              )
                                            )  ss.
CITY AND COUNTY OF DENVER      )

The foregoing instrument was acknowledged before me this 17th day of July, 2014, by Kathryn R. DeBord as Attorney for Plaintiff, Hunter Douglas, Inc., a Delaware  corporation.

Witness my hand and official seal.

MERI PINCOCK
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19974022462
MY COMMISSION EXPIRES JANUARY 23, 2015

Notary Public

My commission expires:    January 23, 2015

1684297.3

EXHIBIT A
LEGAL DESCRIPTION
OF
PROPERTY SUBJECT TO NOTICE OF LIS PENDENS

**41 PANDION LANE, ROCKPORT, COUNTY OF KNOX, STATE OF MAINE:**

Certain lots or parcels of land situated in Rockport, County of Knox, and State of Maine, being bounded and described as follows, to wit:-

**PARCEL A**:   BEGINNING at the top of an iron rod placed in a pile of stones at the northeasterly line of the property now or formerly of Charles F. and Marie G. Helmboldt, said iron rod being south twenty-seven degrees (27°) fifty-eight minutes (58') fifty-four seconds (54") east four hundred thirty-nine and eleven hundredths (439.11) feet from an iron rod at the north corner of said Helmboldt property; thence north thirty-five degrees (35°) fifty-two minutes (52') thirty seconds (30") east by land formerly of Beverly D. Harvey, now or formerly of Leslie O. Harvey, one hundred ninety-five and seventy-nine hundredths (195.79) feet to an iron rod at the southwesterly side of a stone wall; thence south twenty-eight degrees (28°) thirty-three minutes (33') thirty-three seconds (33") east by other land now or formerly of Leslie O. Harvey, one hundred fifty-five and seventy-eight hundredths (155.78) feet to an iron rod at the top of the bank; thence continuing the same course south twenty-eight degrees (28°) thirty-three minutes (33') thirty-three seconds (33") east ninety (90) feet, more or less, to the high water line at Rockport Harbor; thence southwesterly by said high water line two hundred (200) feet, more or less, to a point at the line of said Helmboldt; thence north twenty-seven degrees (27°) fifty-eight minutes (58') fifty-four seconds (54") west eighty-six (86) feet, more or less, to an iron rod at the top of the bank; thence continuing the same course north twenty-seven degrees (27°) fifty-eight minutes (58') fifty-four seconds (54") west by land of said Helmboldt one hundred fifty-eight and seventy-one hundredths (158.71) feet to the place of beginning.  Containing one (1) acre, more or less.

Together with all riparian rights pertaining to said lot and a right of way from said lot to U.S. Route 1.

Excepting from this conveyance any rights of ways that may have been previously conveyed along the so-called Shore Road.

Being a portion of the property conveyed to Leslie O. Harvey and Beverly D. Harvey on November 16, 1965, and recorded in Knox County Registry of Deeds, Book 443, Page 278. Reference is also made to unrecorded survey of Frederick E. Beal dated March 21, 1979.

**PARCEL B**: BEGINNING at a five-eighth (5/8) inch rod found in a pile of stones at the northwest corner of land of Leslie O. Harvey as recorded in the Knox County Registry of Deeds, Book 756, Page 14, referred to as lot number one on unrecorded plan titled "Plan showing lots 1 and 2 on the Leslie O. Harvey and Beverly D. Harvey Property," dated March 19, 1979 by Frederick E. Beal, PLS.  Said iron rod also on the easterly line of land now or formerly of Charles F. and Marie G. Helmboldt as recorded in the Knox County Registry of Deeds, Book

478, Page 102, and further located south twenty-seven degrees (27°) fifty-eight minutes (58') fifty-four seconds (54") east a distance of four hundred thirty-nine and eleven hundredths (439.11) feet from a five-eighth (5/8) inch iron rod found at said Helmboldt's northeasterly corner; thence north thirty-five degrees (35°) fifty-two minutes (52') thirty seconds (30") east by the northerly line of said lot number one a distance of one hundred ninety-five and seventy-nine hundredths (195.79) feet to a five-eighth (5/8) inch iron rod found in a stone wall at the northeasterly corner of said lot number one and at an angle point in the southerly bound now or formerly of David W. Warren, Jr. and Kay G. Warren, as recorded in the Knox County Registry of Deeds, Book 788, Page 148; thence south seventy-one degrees (71°) twenty-five minutes (25') sixteen seconds (16") west by land of said Warren a distance of one hundred eight and ten-hundredths (108.10) feet to an angle point on a stone wall; thence north seventy-six degrees (76°) thirty minutes (30') thirty-eight seconds (38") west still by said Warren a distance of ninety-two and twenty-two hundredths (92.22) feet to a five-eighth (5/8) inch iron rod found on the easterly line of said Helmboldt and located south twenty-seven degrees (27°) fifty-eight minutes (58') fifty-four seconds (54") east a distance of two hundred seventy-four and eleven hundredths (274.11) feet from a five-eighth (5/8) inch iron rod found at Helmboldt's northeast corner; thence south twenty-seven degrees (27°) fifty-eight minutes (58') fifty-four seconds (54") east by said Helmboldt a distance a one hundred sixty-five (165) feet to a five-eighth (5/8) inch iron rod found in a pile of stones at the point of beginning. Containing 0.27 acres, more or less.

Together with a right of way from above described property to U.S. Route 1. For reference see deed of Beverly D. Harvey to David W. Warren, Jr. and Kay G. Warren, recorded in the Knox County Registry of Deeds, Book 788, Page 148.

Being a portion of the premises contained in deed from Harry A Goodridge, recorded in Book 443, Page 278, of the Knox County Registry of Deeds.

For reference see deed from Beverly Crain to Leslie O. Harvey, dated August 13, 1986, and recorded in the Knox County Registry of Deeds, Book 1119, Page 115.

**PARCEL C**: Hereby granting an easement and right to construct a septic system on the land now or formerly of Beverly Crain, together with the right to hook said system to lots of Leslie O. Harvey as conveyed to him by Beverly Crain in Book 756, Page 14. Said easement bounded and described as follows:

COMMENCING at a point, said point being north forty-one degrees (41°) twenty-eight minutes (28') ten seconds (10") east twenty-one and five tenths (21.5) feet from an iron rod in stone wall at the boundary of the land now or formerly of Beverly Crain and the land now or formerly of Donald H. Johnson; thence north sixty-six degrees (66°) eighteen minutes (18') forty seconds (40") [missing a course; should be east], fifty (50) feet; thence south twenty-three degrees (23°) forty-one minutes (41') twenty seconds (20") east eighty (80) feet; thence south sixty-six degrees (66°) eighteen minutes (18') forty seconds (40") west fifty (50) feet; thence north twenty-three degrees (23°) forty-one minutes (41') twenty seconds (20") west eighty (80) feet to the place of beginning. Said septic system being to put in a large enough system to serve the two lots referred to above. Together with a right of way twelve (12) feet wide from said system from the above described easement area in a southerly direction to the southerly property line of the land

2

of Crain; thence in a northeasterly direction along the line of land of Crain to the land now or formerly or Warren. Said right of way and easement system being more particularly described on an unrecorded survey and plan by Frederick E. Beal dated Augusta 1989, plan being a "Standard Boundary Survey for Beverly Crain and Leslie O. Harvey, Sr., Showing Lots Being Conveyed, Lot 1 to Leslie O. Harvey, Jr. and Lot 2 to Linda Lee Harvey in Rockport, Maine."

Being a portion of the land conveyed by Harry A. Goodridge by deed dated November 16, 1965, and recorded in the Knox County Registry of Deeds, Book 443, Page 278.

Reference is made to deed from Beverly Crain, formerly known as Beverly Harvey to Leslie O. Harvey, Sr., dated November 1, 1989 and recorded in the Knox County Registry of Deeds, in Book 1392, Page 277, which deed grants the above described easement.

ALSO CONVEYING to the Grantees, their heirs and assigns, an easement for the purpose of ingress, egress and utilities thirty (30) feet in width, bounded and described as follows: Beginning at an iron rod in the line of land formerly of Helmboldt at the northwesterly corner of Parcel B (.27 acres) conveyed herein; thence North twenty-seven, degrees (27°) fifty-eight minutes (58') fifty-four seconds (54") West by said Helmboldt property 274.11 feet to an iron rod at the northerly corner of said Helmboldt property and at the right of way described in said Helmboldt's deed as recorded in the Knox County Registry of Deeds, Book 478, Page 102, said easement to run on the northeasterly side of the above-described line. ALSO CONVEYING, in common with others, a right of way as described in said deed to Charles F. and Marie G. Helmboldt, recorded in the Knox County Registry of Deeds, Book 478, Page 102, and right of way as described in deed of Harry A. Goodridge to Leslie O. Harvey (Sr.) and Beverly D. Harvey (Crain) dated November 16, 1965, recorded in said Registry in Book 443, Page 278.

Further reference is made to Parcels A, B and C in deed from Leslie O. Harvey to J. Mark Lane, recorded in the Knox County Registry of Deeds, in Book 2286, Page 179.

EXCEPTING from this conveyance any rights of way that may have been previously conveyed along the so-called Shore Road.

Reference is made to deed from Beverly D. Harvey to Leslie O. Harvey, as recorded in the Knox County Registry of Deeds, in Book 756, Page 14. See also deed of Leslie O. Harvey to J. Mark Lane, dated October 19, 1998, and recorded in said Registry at Book 2286, Page 179.

ALSO conveying an easement to install an underground electrical service from Central Maine Power pole no. _____, presently located on the land of Helmboldt as described in Book 478, Page 104, to the property of J. Mark Lane; with the right to maintain said buried electrical service from the surface of the land of Helmboldt situated in the Town of Rockport; with the right to keep the surface of ground above the underground cable free from structures, improvements, and growth which may interfere with the proper operation or maintenance of said underground cable; and the right to enter upon the land of Helmboldt for any and all of the foregoing purposes; subject, however, to the duty of grantees to restore the surface above said underground cable to the same condition it was in prior to installation or maintenance of said underground cable.

For reference see deed from Charles F. Helmboldt to J. Mark Lane, dated September 8, 2000.

3

ALSO EXCEPTING an easement for the purpose of ingress, egress and utilities thirty (30) feet in width, bounded and described as follows:  Beginning at an iron rod, in the line of land formerly of Helmboldt at the northwesterly corner of Parcel B (.27) acres on said deed of Harvey to Lane at Book 2286, Page 179; thence North 27° 58' 54" West by said Helmboldt property two hundred seventy-four and eleven hundredths (274.11) feet to an iron rod at the northerly corner of said Helmboldt property and at the right of way described in said Helmboldt's deed as recorded in the Knox County Registry of Deeds, Book 478, Page 102, said easement to run on the northeasterly side of the above-described line.

SUBJECT TO and benefited by certain covenants and restrictions recorded at the Knox County Registry of Deeds in Book 2391, Page 138.

ALSO SUBJECT TO the terms of a view easement from Leslie O. Harvey to David W. Warren, Jr., and Kay G. Warren dated May 7, 1980, and recorded at the Knox County Registry of Deeds in Book 788, Page 154.

ALSO CONVEYING a certain lot or parcel of land situated in Rockport, County of Knox, and State of Maine, bounded and described as follows;

COMMENCING at a 6" X 6" granite monument at the land now or formerly of Hartwell Dowling and the land now or formerly of K. G. and David R. Warren and the land now or formerly of Donald H. Johnson; thence North 79° 16' 9" West [sic: should be East] by the land now or formerly of Warren 256.23 feet to a 5/8 inch iron rod; thence South 17° 36' 07" East still by the land now or formerly of Warren 140.07 feet to a 5/8 inch iron rod; thence South 85° 55" West 90.85 feet to a 5/8 inch iron rod; thence South 36° 03' 36" West 174.25 feet to an iron rod in a stone wall at the land now or formerly of Johnson; thence North 25° 44' 51" West by said stone wall and the land now or formerly of Johnson 76.86 feet to an iron rod; thence North 22° 15' 06" West by the land now or formerly of said Johnson 178.64 feet to the place of beginning.

Being a portion of the land conveyed by Harry A. Goodridge by deed dated November 16, 1965, and recorded in the Knox County Registry of Deeds, Book 443, Page 278.  Also reference is made to deed to Beverly Crain, formerly known as Beverly D. Harvey, from Leslie O. Harvey, Sr.

Also granting to the Grantee a right of way from U. S. Route One to be used in common with others as described in deed conveyance to Leslie O. Harvey (Sr.) and Beverly D. Harvey (Crain) on November 16, 1965, and recorded in the Knox County Registry of Deeds, Book 443, Page 278.

EXCEPTING from this conveyance rights of way previously conveyed to Charles F. and Marie G. Helmboldt as described in their deed as recorded on July 10, 1968, and recorded in the Knox County Registry of Deeds, Book 478, Page 102.  And a right of way to be used in common by Leslie O. Harvey (Sr.) and Beverly D. Harvey (Crain) and others described as follows:

BEGINNING at an iron rod at the line of said Leslie O. Harvey (Sr.); thence South 71° 25' 16" West by land conveyed to David W. Warren, Jr. and Kay G. Warren 108.10 feet; thence North 76° 30' 38" West 92.22 feet to an iron rod at the line of Charles and Marie G. Helmboldt; said right of way to be 30 feet wide and being on the South side of the above described line; also a

4

right of way beginning at an iron rod at the line of Charles and Marie G. Helmboldt; thence North 27° 58' 54" West by said Helmboldt property 274.11 feet to an iron rod at the northwesterly corner of said property and at the right of way described in said Helmboldts' deed as recorded in the Knox County Registry of Deeds, Book 478, Page 102.  Said right of way to be 30 feet wide and being on the northeasterly side of the above described line and running from the previously described 30-foot right of way to the right of way described in deed to Helmboldt. Also a right of way as described in deed to Charles F. and Marie G. Helmboldt and recorded in the Knox County Registry of Deeds, Book 478, Page 102.  Also a right of way as described in deed to Leslie O. Harvey (Sr.) and Beverly D. Harvey (Crain) on November 16, 1965, and recorded in the Knox County Registry of Deeds, Book 443, Page 278.

The purpose of all the above described rights of way is to reserve one continuous right of way to the said Leslie O. Harvey (Sr.) over several previously conveyed rights of way from the Lots described in deed Leslie O. Harvey (Sr.) on June 7, 1979 and recorded in the Knox County Registry of Deeds, Book 756, Page 14, to the U. S. Route One.

For reference see deed from Beverly Crain, formerly known as Beverly D. Harvey, to Leslie O. Harvey, Jr., dated November 1, 1989, and, recorded in the Knox County Registry of Deeds, in Book 1392, Page 282.

For further reference see deed from Leslie O. Harvey, Jr., to Beverly Crain and Frank D. Crain, dated December 20, 1990, and recorded in the Knox County Registry of Deeds in Book 1472, Page 54.

ALSO EXCEPTING an easement and right to construct a subsurface wastewater disposal system, together with the right to hook into said system and maintain the same for the benefit of grantee as described in Book 1392, Page 279.  Said easement bounded and described as follows:

COMMENCING at an iron rod at the northwesterly corner of the land of the grantee and at the land now or formerly of Johnson at a stone wall; thence North 25° 44' 51" West by the land of said Johnson 45 feet; thence North 36° 03' 36" East 123 feet to a corner; thence South 25° 44' 51" East 45 feet to other land of said grantee, Linda Lee Harvey; thence South 36° 03' 36" West by the land of said Harvey 23 [sic; 123?] feet to the place of beginning.  Said easement being a portion of the land described in these grantors by Leslie O. Harvey, Jr., recorded, in the Knox County Registry of Deeds, Book 1472, Page 54.

Reference is made to deed from Beverly Crain. and Frank D. Crain to Linda Lee Harvey.

For reference, see warranty deed of Beverly Crain and Frank D. Crain to J. Mark Lane, dated July 24, 2000, and recorded at the Knox County Registry of Deeds in Book 2506, Page 301.

1684297.3

**EXHIBIT B**
**LEGAL DESCRIPTION**
**OF**
**PROPERTY SUBJECT TO NOTICE OF LIS PENDENS**

## VACANT LAND ON BARNESTOWN ROAD, CAMDEN, COUNTY OF KNOX, STATE OF MAINE:

A certain lot or parcel of land situated in the Town of Camden, County of Knox and the State of Maine, and being more particularly bounded and described as follows:

> Bounded north by land now or formerly of Wm. H. Cotton; east by the Hosmer Pond Road (now Barnestown Road); south by land now or formerly of Knowlton Brothers; and west by land now or formerly of Town of Camden and Freeman Harriman. Recorded in the Knox County Registry of Deeds in Book 08, Page 168 (said book and page reference is to the Tax Lien books in said Registry).

> FOR REFERENCE see Parcel 7 on Quitclaim Deed from Inhabitants of the Town of Camden to June R.P. White dated May 13, 1942; recorded November 21, 1945 in the Knox County Registry of Deeds in Book 287, Pages 59 and 60, conveying Grantor's right, title and interest in and to several pieces of real estate formerly taxed to W.L. Cotton. FOR FURTHER REFERENCE see Warranty Deed from Thomas H. Grant to Susie P. Grant dated September 26, 1910; recorded in said Registry in Book 154, Page 038.

ALSO a certain lot or parcel of land situated in said Camden, and being more particularly bounded and described as follows:

> Bounded north by land now or formerly of Fred Buzzell; east by the Hosmer Pond Road (now Barnestown Road); south by land now or formerly of Thomas Grant; and west by land of C.W. Barnes. Recorded in the Knox County Registry of Deeds in Book 07, Page 145 (said book and page reference is to the Tax Lien books in said Registry).

> FOR REFERENCE, see Parcel 4 on Quitclaim Deed from the Inhabitants of the Town of Camden to June R.P. White dated May 13, 1942; recorded November 21, 1945 in the Knox County Registry of Deeds in Book 287, Pages 59 and 60, conveying Grantor's right, title and interest in and to several pieces of real estate formerly taxed to W. L. Cotton. FOR FURTHER REFERENCE see Warranty Deed from George Shorkley to William L. Cotton dated September 17, 1921, recorded in said Registry in Book 191, Page 194.

FOR REFERENCE, see deed from Jean Doty to Jason T. Throne and Mary C. Throne, dated April 7, 2003 and recorded at the Knox County Registry of Deeds in Book 2957, Page 304.

1684297.3